**Sorachai SIDA and Nongyao Puasirirutskul Sida, Petitioners,**

**v.**

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 80–7435.

United States Court of Appeals, Ninth Circuit.

Submitted April 9, 1981.

Decided June 15, 1981.

As Amended on Denial of Rehearing and Rehearing En Banc Dec. 21, 1981.

M. Rito Corrales, Santa Ana, Cal., for petitioners.

Carolyn M. Reynolds, Asst. U. S. Atty., Los Angeles, Cal., for respondent.

Before PREGERSON and REINHARDT, Circuit Judges, and HARDY *, District Judge.

PREGERSON, Circuit Judge:

Mr. and Mrs. Sorachai and Nongyao Puasirirutskul Sida petition for review of the denial by the Board of Immigration Appeals (BIA) of Mrs. Sida's motion to reopen the deportation proceedings. Because the BIA abused its discretion in denying Mrs. Sida's motion to reopen, we reverse.

Petitioners are husband and wife, natives and citizens of Thailand. Both entered the United States in 1969 as students. They left the country for one month in 1972 to be married in Thailand, and returned. In June 1977, their visas having expired, they were found deportable as overstays. At that time they requested and were granted additional time to file for suspension of deportation and voluntary departure. Two months later, in August 1977, petitioners applied only for voluntary departure, which was granted.

In January 1978, Mrs. Sida moved to reopen the deportation proceedings on the ground that she was eligible for suspension of deportation. The unopposed motion was granted. At the hearing on May 8, 1978, however, petitioner's counsel withdrew the application for suspension of deportation, stating that Mrs. Sida's one month visit to Thailand in 1972 to be married interrupted the seven years continuous presence required for eligibility for suspension of deportation.[1] In light of counsel's representation, Mrs. Sida reapplied only for voluntary departure, which was again granted to both her and her husband. Although Mrs. Sida withdrew her application for suspension of deportation, the immigration judge, without holding an evidentiary hearing, nevertheless ruled on the application. He found that Mrs. Sida's trip to Thailand was a meaningful departure which broke the seven year continuous presence requirement of 8 U.S.C. § 1254(a).

One year later, in February 1979, new counsel for petitioners moved to reopen the deportation proceedings once more on the

---

* The Honorable Charles L. Hardy, United States District Judge for the District of Arizona, sitting by designation.

1. Motions to reopen permit an alien to apply for the discretionary relief of suspension of deportation. Suspension of deportation is available if the alien demonstrates: (1) seven years continuous presence in the United States; (2) good moral character during that time; (3) extreme hardship "to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1254(a)(1).

ground that Mrs. Sida was entitled to suspension of deportation. On April 18, 1979, the immigration judge denied the motion to reopen on the ground that Mrs. Sida had failed to present new, additional, and previously unavailable evidence as required by 8 C.F.R. 242.22. The immigration judge also ruled that:

A failure to comply with the regulations as to new material might be excused if she had a meritorious case, but this is not the case. The burden is upon the [petitioner] to establish that she has seven years continuous physical presence in the United States. This she cannot do. Her trip to Thailand was a lengthy one involving several thousand miles. Of necessity it required that she obtain travel documents and make advance preparations. The purpose of the trip was to get married and as indicated on the suspension application, she in fact did marry within a week after her arrival in Thailand. This was not a casual spur of the moment excursion beyond the borders of the United States. *Wadman v. INS*, 329 F.2d 812 (9th Cir. 1964). It was a carefully planned deliberate trip which was "meaningfully interruptive" of her presence in the United States, *Rosenberg v. Fleuti*, 374 U.S. [449] 461 [83 S.Ct. 1804, 10 L.Ed.2d 1000] (1963); *Heitland v. INS*, 551 F.2d 495 (2d Cir. 1977). This is not the type of case that I would excuse from compliance with the regulations governing motion to reopen. The motion to reopen will be denied.

The BIA dismissed petitioners' appeal from the denial of the motion to reopen. Petitioners now pursue their case before this court, contending that the BIA erred in refusing to reopen the deportation proceedings.

The BIA *may not* grant a motion to reopen unless it is based upon new, material facts. 8 C.F.R. § 3.2 (1979) (emphasis added). The new facts must be supported by "affidavits or other evidentiary material." 8 C.F.R. § 3.8 (1979). As the Supreme Court recently observed:

The present regulation [8 C.F.R. § 3.2] is framed negatively; it directs the Board that it may not reopen unless certain showings are made. It does not affirmatively require the Board to reopen the proceedings under any particular condition. Thus, the regulations may be construed to provide the Board with discretion in determining under what circumstances a proceeding should be reopened.

*INS v. Wang*, 450 U.S. 139, 143 n.5, 101 S.Ct. 1027, 1030 n.5, 67 L.Ed.2d 123 (1981). Failure to allege new facts supported by evidentiary material is an adequate ground for denial of a motion to reopen. *Id.* at 143, 101 S.Ct. 1030. Therefore two questions are presented: (1) Did Mrs. Sida allege new facts supported by evidentiary material; and (2) if so, did the BIA abuse its discretion in denying the motion to reopen.

1. *New Facts*

The government asserts that Mrs. Sida, in support of the second motion to reopen, did not submit any new evidence by way of affidavit or other evidentiary material. The government argues that Mrs. Sida merely resubmitted her previously withdrawn 1978 application for suspension of deportation which asserted extreme hardship to herself and to her American citizen child. This is incorrect.

Attached to the motion to reopen dated February 26, 1979, is previously submitted documentation plus a letter dated February 7, 1979, from the citizen child's doctor stating: "This child is suffering from recurrent tonsillitis and pulmonary congestion and fever by history. This child historically becomes very ill in Thailand. He shouldn't return to Thailand." Mrs. Sida states that this respiratory condition was "recently discovered" when the child traveled to Thailand to visit his grandparents. Thus the record reflects that Mrs. Sida did submit new evidence in support of her motion to reopen. Perhaps the immigration judge did not believe the new evidence was material, but there are no findings in that regard. The doctor's letter satisfies the "other evidentiary material" requirement of 8 C.F.R. § 3.8.

## 2. *Abuse of Discretion*

In affirming the denial of the motion to reopen, the BIA did not address the government's claim that no new evidence had been submitted. Rather, the BIA dismissed the appeal as a matter of discretion, stating:

Inasmuch as the respondents have twice failed to leave the country voluntarily and have already had an opportunity to establish eligibility for suspension of deportation, we do not believe that reopening of proceedings is warranted a second time.

The Supreme Court in *INS v. Wang, supra*, did not explicitly identify the standard of review of a denial of a motion to reopen. The Court appeared to suggest, however, that the abuse of discretion standard applies and that the BIA has discretion to deny a motion to reopen even if the alien establishes a prima facie case of eligibility for suspension of deportation.

If INS discretion is to mean anything, it must be that the INS has some latitude in deciding when to reopen a case. The INS should have the right to be restrictive. Granting such motions too freely will permit endless delay of deportation by aliens creative and fertile enough to continuously produce new and material facts sufficient to establish a prima facie case. It will also waste the time and efforts of immigration judges called upon to preside at hearings automatically required by the prima facie allegations.

*INS v. Wang*, 450 U.S. at 143 n.5, 101 S.Ct. at 1030 n.5, *quoting Villena v. INS*, 622 F.2d 1352, 1362 (9th Cir. 1980) (en banc) (Wallace, J., dissenting).

■ We hold that the BIA abused its discretion in denying the motion to reopen. The BIA ignored the new evidence presented in the motion to reopen. Instead, it refused to reopen the proceedings on the ground that the Sidas previously had been given two opportunities to apply for suspension of deportation, and had failed to do so; therefore, according to the BIA, their case did not warrant any consideration. This was improper.

We have recently held that although aliens have no absolute right to the discretionary relief of suspension of deportation, they are entitled to due consideration of all relevant factors which may establish extreme hardship. *Santana-Figueroa v. INS*, 644 F.2d 1354, 1357 (9th Cir. 1981). In *Santana-Figueroa*, the BIA denied an alien's request for suspension of deportation without discussing the basis of its decision. This court reversed and remanded, stating:

[W]hen allegations are specific and supported by evidentiary material, and the Board denies eligibility for relief, it must give reasons for its decisions showing that it has properly considered the circumstances. To affirm on the theory that the Board necessarily considered whatever the petitioner asserted would free the Board of the obligation to articulate a reasoned basis for its decisions, eliminating any guaranty of rationality and foreclosing meaningful review for abuse of discretion.

*Id.* (Citations and footnote omitted.)

■ As with the discretionary relief of suspension of deportation, an alien is not entitled to a reopening of deportation proceedings. But the principles underlying our holding in *Santana-Figueroa* are equally applicable here. Just as an alien is entitled to consideration of all relevant factors that may establish extreme hardship, an alien should be entitled to consideration of new evidence presented in support of a motion to reopen. Otherwise we open the door to potentially arbitrary administrative decisions as to what new evidence will be considered and what new evidence will be cast aside. The better approach requires the BIA to consider an alien's newly available evidence and to rule on the merits; it does not allow the BIA to refuse to consider new evidence whenever it feels that the alien, for whatever reason, does not merit any consideration.

■ Requiring the BIA to address and rule on new evidence presented in a motion to reopen is not at odds with the Supreme Court's decision in *INS v. Wang*. This approach does not *compel* the BIA to grant

motions to reopen where a prima facie case is established. Rather, this approach compels the BIA to *address* the evidence presented, and *state the reasons* why, for example, the evidence is not sufficient under the applicable regulations; why a prima facie case has not been made out; or why, if a prima facie case is made out, a reopening is not warranted.

We note that the BIA's decision makes little sense. There is no limit, by statute or regulation, on the number of times an alien may move to reopen deportation proceedings. The only prerequisite for filing a motion to reopen is the existence of new facts supported by affidavit or other evidentiary material. It is unfair to grant the opportunity to present newly available evidence and then to refuse to consider the evidence on the ground that the alien had other opportunities to apply for discretionary relief. Moreover, if the medical evidence was not previously available, it could not have been presented earlier. If the evidence was previously available, the BIA should have so found instead of summarily dismissing the appeal. Our problem is with an administrative system that holds out the opportunity to present new evidence, but does not assure that the new evidence will be meaningfully evaluated. This is what the BIA did here—an action we cannot condone. Accordingly we remand this matter to the BIA with instructions to reconsider the motion to reopen and to articulate the underlying reasons and basis for any rulings it makes. *See Perez v. INS,* 643 F.2d 640, 641 (9th Cir. 1981).

Finally, we also point out that the immigration judge erred in determining that the one month trip to Thailand was "meaningfully interruptive" of Mrs. Sida's stay in the United States. In making this determination, the immigration judge relied on factors previously rejected by this court in *Kamheangpatiyooth v. INS,* 597 F.2d 1253, 1257–58 (9th Cir. 1979). *See also Gallardo v. INS,* 624 F.2d 85 (9th Cir. 1980). If on remand the Board concludes that Mrs.

Sida has established extreme hardship, it will then have to determine, under the test set forth in *Kamheangpatiyooth,* whether Mrs. Sida has satisfied the seven year residence requirement. The Board will also have to determine whether Mrs. Sida meets the standards for good moral character. As noted in footnote 1, *supra,* all three requirements must be satisfied before the Board and the Attorney General may exercise their discretion to suspend deportation.

REMANDED.