Giedrius Leo KAZLAUSKAS, Petitioner,

v.

IMMIGRATION & NATURALIZATION SERVICE, Respondent.

No. 92–70665.

United States Court of Appeals, Ninth Circuit.

Submitted April 5, 1994.*

Decided Jan. 27, 1995.

---

* The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34–4.

Judith L. Wood, Los Angeles, CA, for petitioner.

Karen Fletcher Torstenson, Office of Immigration Litigation, U.S. Dept. of Justice, Washington, DC, for respondent.

Before: HUG, WIGGINS, and NOONAN, Circuit Judges.

WIGGINS, Circuit Judge:

## OVERVIEW

Petitioner Giedrius Leo Kazlauskas was found deportable by an immigration judge ("IJ") and Kazlauskas' applications for asylum and temporary withholding of deportation were denied. The Board of Immigration Appeals ("BIA") affirmed the IJ's decision, and Kazlauskas appeals. We have jurisdiction pursuant to 8 U.S.C. § 1105a, and we affirm.

## FACTS

Kazlauskas was born in Kaunas, Lithuania in 1964, when that country was controlled by the Soviet Union. Kazlauskas' father had been a dissident and political prisoner in Soviet labor camps, where he died in 1975. Kazlauskas was religious and resisted participation in programs sponsored by the Communist Party. As a result, he was ostracized, harassed by his teachers and peers, and prevented from advancing to the university.

Kazlauskas came to this country in 1980, at the age of sixteen. Shortly thereafter, he developed a drinking problem. In 1983, he was twice convicted of burglary. His mother was granted asylum as a refugee in 1984, but Kazlauskas failed to attend the hearing at which he, too, could have been granted asylum. Since then, he has become sober and has held a steady job that allows him to help his mother with her bills.

The INS began deportation proceedings against Kazlauskas on December 11, 1989. The order to show cause alleged that Kazlauskas was deportable because he overstayed his visa and because he had been convicted of two crimes of moral turpitude, in violation of 8 U.S.C. § 1251(a)(2) and (4) (now renumbered as 8 U.S.C. § 1251(a)(1)(C)(i) and (2)(A)(ii)). Kazlauskas conceded his deportability, but he requested asylum under 8 U.S.C. § 1158(a) ("section 208") and temporary withholding of deportation under 8 U.S.C. § 1253(h) ("section 243(h)"). After a preliminary hearing, the IJ solicited the opinion of the State Department concerning Kazlauskas' requests. On March

12, 1990, the State Department responded that it believed that Kazlauskas had a well-founded fear of persecution if he returned to Lithuania.

When the hearing reconvened on October 22, 1990, the IJ requested another State Department opinion because of changes that recently had occurred in Lithuania. That opinion, dated April 30, 1991, stated that "the situation in the Baltic republics is still very fluid," and that "it is not possible to predict what would await [Kazlauskas] if he were obliged to return" to Lithuania. Kazlauskas' hearing resumed on April 8, 1992. The IJ denied Kazlauskas' requests for asylum and temporary withholding of deportation. The BIA affirmed the IJ's decision and adopted the IJ's reasoning. Kazlauskas appeals, arguing that the treatment that he suffered while a youth in Lithuania and the likelihood of persecution if he returns merit relief from deportation.

## DISCUSSION

### I. DENIAL OF APPLICATION FOR ASYLUM

#### A. Standard of Review

■■ Because the BIA did not independently review Kazlauskas' case and instead adopted the IJ's opinion, we review the decision of the IJ. *See Campos–Granillo v. INS,* 12 F.3d 849, 852 (9th Cir.1993). We review a denial of asylum for an abuse of discretion. *Berroteran–Melendez v. INS,* 955 F.2d 1251, 1255 (9th Cir.1992). The factual findings underlying the decision are reviewed for substantial evidence, and the IJ's determination should not be reversed absent compelling evidence of persecution. *See INS v. Elias–Zacarias,* 502 U.S. 478, 480–81, 112 S.Ct. 812, 815, 117 L.Ed.2d 38 (1992); *Ghebllawi v. INS,* 28 F.3d 83, 85–86 (9th Cir.1994).

#### B. Kazlauskas' Asylum Application

■■■ A two-step inquiry is required in evaluating an applicant's request for asylum. *Barraza Rivera v. INS,* 913 F.2d 1443, 1449 (9th Cir.1990). First, the applicant must establish his *eligibility* for asylum by demonstrating that he meets the statutory definition of a "refugee." *Id.;* 8 U.S.C. § 1158(a) (asylum is only available if the applicant is a "refugee" as defined by 8 U.S.C. § 1101(a)(42)(A)).[1] Refugee status may be established by a showing of either past persecution or likely future persecution. *Acewicz v. INS,* 984 F.2d 1056, 1061–62 (9th Cir. 1993); *Berroteran–Melendez,* 955 F.2d at 1255 & n. 3 (citing *Desir v. Ilchert,* 840 F.2d 723, 729 (9th Cir.1988)); *Matter of Chen,* 1989 WL 331860, Interim Dec. 3104, 1989 BIA LEXIS 10, at *4–*6 (B.I.A. Apr. 25, 1989); *see* 8 U.S.C. § 1101(a)(42)(A) (defining a refugee as one who is unable or unwilling to return to his country of origin "because of persecution *or* a well-founded fear of persecution") (emphasis added).

■ The second question is whether the eligible applicant is *entitled* to asylum as a matter of discretion. 8 U.S.C. § 1158(a);[2] *INS v. Stevic,* 467 U.S. 407, 423 n. 18, 104 S.Ct. 2489, 2497 n. 18, 81 L.Ed.2d 321 (1984); *Barraza Rivera,* 913 F.2d at 1449. At this second step, prospective questions about the potential effects of the applicant's return to his country of origin again are relevant, even if the applicant established his eligibility for asylum by showing only past persecution. *See Matter of Chen,* 1989 WL 331860, 1989 BIA LEXIS 10, at *6 ("[i]f an alien establishes that ... he is eligible for a grant of asylum[,] [t]he likelihood of present or future persecution then becomes relevant as to the exercise of discretion, and asylum may be

---

**1.** A "refugee" is defined as
    any person who is outside any country of such person's nationality ... and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion....

8 U.S.C. § 1101(a)(42)(A).

**2.** Section 1158(a) grants discretion to the Attorney General. By regulation, the INS has delegated discretionary authority to IJs. 8 C.F.R. §§ 3.10, 208.14(a), 242.8 (1994). An IJ's decision is then reviewable by the BIA. *Id.* §§ 3.1(b)(2), 208.18(c), 242.21(a).

denied as a matter of discretion if there is little likelihood of present persecution").

While the oral decision of the IJ in this case is not a model of clarity, we conclude that Kazlauskas' request for relief from deportation was properly denied. The IJ's opinion states the correct two-step inquiry and it does address the relevant factors of Kazlauskas' case.

The IJ stated that Kazlauskas was "statutorily as well as discretionarily ineligible for asylum." We read this statement as a conclusion by the IJ that Kazlauskas demonstrated neither his eligibility nor his entitlement to asylum. We do not decide whether the IJ correctly determined that Kazlauskas was statutorily ineligible for asylum because we conclude that the IJ permissibly found asylum unwarranted as a matter of discretion.

■ In determining whether to grant asylum as a discretionary matter, the likelihood of future persecution is a particularly important factor to consider. *See Matter of Pula,* 19 I. & N. Dec. 467, 474 (1987). The IJ concluded that Kazlauskas does not have a well-founded fear of persecution if he returns to Lithuania, and we agree.

■ To establish a well-founded fear of persecution, Kazlauskas must show both that he has a genuine fear, and that his fear is objectively reasonable. *See Berroteran–Melendez,* 955 F.2d at 1256. The IJ exhaustively explained why Kazlauskas could not meet the objective element in light of the dramatic political and social changes in the Baltic Republics.[3] We find substantial evidence to

support the IJ's conclusion.[4] The IJ based his analysis on the 1991 State Department *Country Report on Human Rights Practices,* which has been described as "the most appropriate and perhaps the best resource" for "information on political situations in foreign nations." *Rojas v. INS,* 937 F.2d 186, 190 n. 1 (5th Cir.1991); *see also Getachew v. INS,* 25 F.3d 841, 847–88 (9th Cir.1994) (disputing BIA's description of the political climate in Ethiopia based on the differing analysis contained in the State Department's country report). The State Department report provided the most up-to-date information about conditions in Lithuania and it described a country that had changed dramatically since the August 1991 failed coup in the Soviet Union. Since then, the Lithuanian authorities had fully assumed the reigns of government, enacted numerous laws to protect individual rights, improved the conditions of Lithuanians who had been imprisoned during Soviet control, and discontinued many of the former Soviet practices of surveillance and control. There had been no reports of conduct by the Lithuanian authorities similar to the repressive and abusive conduct by former Soviet authorities.

■ Absent a likelihood of future persecution, asylum is warranted for "humanitarian reasons" only if Kazlauskas demonstrates that in the past "[he] or his family has suffered 'under atrocious forms of persecution.'" *Acewicz,* 984 F.2d at 1062 (quoting *Matter of Chen,* 1989 WL 331860, 1989 BIA LEXIS 10, at *8 (internal quotation omitted)). In *Matter of Chen,* 1989 WL 331860, the BIA concluded that sufficiently atrocious persecution had been shown where a Chinese

---

3. Fundamental social or political changes in the applicant's homeland are highly relevant to the likelihood of future persecution. *See, e.g., Hernandez–Ortiz v. INS,* 777 F.2d 509, 513 (9th Cir.1985) (noting, in context of determining eligibility for asylum, that conditions in country of origin are relevant to likelihood of future persecution); *Matter of Chen,* 1989 WL 331860, 1989 BIA LEXIS 10, at *6–*7 (same, in context of discretionary entitlement to asylum).

4. As a threshold matter, we reject Kazlauskas' argument that the IJ abused his discretion by taking administrative notice of the changes in Lithuania. As in *Acewicz v. INS,* where this court permitted administrative notice of political changes in Poland, administrative notice in this case did not result in any due process violation.

On February 9, 1990, the IJ sought a State Department opinion about the effect that changes in Lithuania would have on the likelihood of Kazlauskas' future persecution. During Kazlauskas' hearing on October 22, 1990, the IJ explained that recent changes in Lithuania necessitated a second State Department advisory opinion. When the hearing resumed on April 8, 1992, Kazlauskas argued that despite changes in Lithuania, he retained a "well-founded fear of persecution." He presented witnesses and documentary evidence to support his argument. The IJ considered the nature of the changes in Lithuania and the specific facts of Kazlauskas' case. We conclude there was no due process violation here because Kazlauskas had both notice and an opportunity to be heard.

Christian had been tortured, harassed, confined, and denied food and medical attention since the age of eight. 1989 WL 331860, 1989 BIA LEXIS 10, at *9–*14. We do not attempt to define the minimum showing of "atrocity" necessary to warrant a discretionary grant of asylum based on past persecution alone. We merely hold that the IJ did not abuse his discretion by concluding that the harassment and ostracism Kazlauskas suffered is not such "atrocious" past persecution as to warrant a discretionary grant of asylum.[5]

■ If an IJ fails to consider factors that are relevant to the asylum application, it abuses its discretion. *Castro–O'Ryan v. INS*, 847 F.2d 1307, 1314 (9th Cir.1987). That is not the case here, however. The IJ considered both favorable and unfavorable factors, including the likelihood of persecution if Kazlauskas returns to Lithuania, the severity of Kazlauskas' and his family's past persecution, his alcohol rehabilitation, the circumstances surrounding his departure from Lithuania and his entry into the United States, and his criminal record since he has been in this country. *See id.* (relevant factors might include applicant's prior convictions, his family's dependence on him, his rehabilitation, and the dangers he is likely to face if returned to his country of origin); *Matter of Chen*, 1989 WL 331860, 1989 BIA LEXIS 10, at *8; *Matter of Pula*, 19 I. & N. Dec. at 473–74. Unlike *Castro–O'Ryan*, 847 F.2d at 1314, in which this court found an abuse of discretion, the IJ's opinion in this case does review the evidence and does not treat Kazlauskas' prior convictions as "dispositive." Indeed, the IJ's opinion properly places particular emphasis on the treatment Kazlauskas is likely to face if he returns to Lithuania. *See id.; Matter of Pula*, 19 I. & N. Dec. at 474.

## II. DENIAL OF APPLICATION FOR TEMPORARY WITHHOLDING OF DEPORTATION

■ The IJ's decision to withhold deportation under section 243(h) is reviewed for substantial evidence. *Berroteran–Melendez*,

955 F.2d at 1255. An applicant only qualifies for a withholding of deportation if he shows a "clear probability of persecution" upon return to his country of origin. *Stevic*, 467 U.S. at 413, 104 S.Ct. at 2492; *Acewicz*, 984 F.2d at 1062. A "clear probability" means that the applicant will more likely than not be persecuted if deported. *INS v. Cardoza–Fonseca*, 480 U.S. 421, 430, 107 S.Ct. 1207, 1212, 94 L.Ed.2d 434 (1987); *Acewicz*, 984 F.2d at 1062. This is a more stringent standard than the "well-founded fear" standard required by section 208. *Acewicz*, 984 F.2d at 1062. Because Kazlauskas cannot meet the lower standard of section 208, he necessarily fails to show a "clear probability" of persecution under section 243(h). *See id.* In light of the significant changes in Lithuania, the IJ's denial of Kazlauskas' waiver of deportation is supported by substantial evidence.

## CONCLUSION

For the forgoing reasons, we conclude that the discretionary denial of Kazlauskas' application for asylum was not an abuse of discretion and that substantial evidence supports the denial of Kazlauskas' application for temporary withholding of deportation. We therefore AFFIRM.

NOONAN, Circuit Judge, dissenting:

Giedrius Leo Kazlauskas petitions this court to review the decision of the Board of Immigration Appeals (the Board) denying him asylum. The Board adopted the decision and the reasoning of the Immigration Judge (IJ). We review the Board, but by the terms of its decision we are referred to the decision and reasoning of the IJ. The IJ's reasoning is far from clear. He acknowledges that under *Matter of Chen*, 20 I & N Dec., Int. Dec. 3104 (BIA 1989), an applicant for asylum may establish eligibility by presenting evidence of past persecution, as Kazlauskas sought to do. The IJ believed the testimony of Kazlauskas but ruled that there was no proof "that he has ever been sought out for persecution by the former Soviet Union or its government or apparatuses." In reaching

---

5. Cases in other circuits have found asylum unwarranted on facts far more egregious than those in this case. *Skalak v. INS*, 944 F.2d 364, 365 (7th Cir.1991) (being twice jailed for interrogation and being harassed by officials at work not sufficient); *Rojas*, 937 F.2d at 188–90 (prior arrest, beating, torture, and dismissal from work not sufficient).

this conclusion the IJ ignored Kazlauskas' testimony that at school he was subjected to harassment by teachers because of his religious beliefs and his mother's testimony that for a period of 12 years, from 1963 to 1975, his parents were annually put under house arrest for a period of days with the effect that they were political prisoners and did not have any friends. The teachers at school and those agents of the state who held his family under arrest were officials of the Soviet Union. As the IJ believed Kazlauskas and his mother, and as no other evidence was presented, the IJ had no basis for rejecting their testimony that Kazlauskas suffered persecution from the government when he was in Lithuania.

The IJ went on to find that there was no evidence that Kazlauskas would be persecuted by the present government of Lithuania. The IJ added: "The respondent has had difficulties with the laws of this country, numerous convictions for burglary, alcohol abuse. Although there appears to be rehabilitation on that part, these are factors that mitigate (sic) against the respondent's case to be granted as a matter of discretion, even if he had been found to have established a well-founded fear of persecution in the past or the present."

A proper analysis by the IJ on the basis of the undisputed testimony would have been that Kazlauskas' past persecution by the Soviet government in Lithuania made him eligible for asylum. *Acewicz v. INS*, 984 F.2d 1056 (9th Cir.1993); *Desir v. Ilchert*, 840 F.2d 723, 729 (9th Cir.1988). The IJ was then in a position in which he could have exercised discretion not to grant asylum. *Acewicz*, 984 F.2d at 1056. However, in the exercise of discretion the IJ was bound to look at all the factors in the case including those favorable to the petitioner. *Shahandeh–Pey v. I.N.S.*, 831 F.2d 1384, 1387–88 (7th Cir.1987). The factors favorable to Kazlauskas were not only rehabilitation from his teen-age abuse of alcohol—a rehabilitation noted somewhat disparagingly by the IJ—but also the evidence that he had worked full-time for the past two years; that he had plans for marriage in the United States; that he supports his mother financially; that he had registered for the Selective Service; that he had paid income taxes since 1982; and that for the past 18 months he had volunteered for about eight hours each Sunday at a recovery house to help "young people stay away from alcohol." The IJ also should have observed that only through his suffering from the disease of alcoholism at the age of 16 did he fail to be included with his mother when she received political asylum and that the "numerous convictions for burglary" amounted to two court appearances in the period April–May 1983 when Kazlauskas was nineteen years old and still suffering from his disease. We have long recognized that chronic addiction to alcohol is an illness not a crime. *Griffis v. Weinberger*, 509 F.2d 837, 838 (9th Cir.1975). A fair reading of the burglary convictions connects them with the illness which he then suffered. Finally, the IJ should have considered the hardship that Kazlauskas' deportation would inflict upon his mother, who is now lawfully admitted to the United States and who depends heavily upon him for financial support, companionship and family affection. *Campos–Granillo v. INS*, 12 F.3d 849, 852 (9th Cir.1993), *amended* 94 C.D.O.S. 1131 (9th Cir. Feb. 16, 1994)

The Board, affirming the IJ without any effort to redo his inadequate work, achieved a severe result. We should, and could, do better.