133 F.3d 925
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Abdul G.H. BAFAIZ; Shukria Bafaiz, Petitioners,
v.
IMMIGRATION AND NATURALIZATION SERVICES, Respondent.
 Nos. 97-70116, Alw-srr-eqz.
 United States Court of Appeals, Ninth Circuit.
 Submitted December 15, 1997**
Decided Dec. 19, 1997.
 
 Before SNEED, LEAVY, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Abdul Bafaiz and Shukria Bafaiz ("Petitioners"), husband and wife and natives and citizens of Afghanistan, petition for review of the Board of Immigration Appeals' ("BIA") decision affirming the order of an immigration judge ("IJ") denying their applications for asylum and withholding of deportation under sections 208(a) and 243(h) of the Immigration and Nationality Act ("the Act"), 8 U.S.C. §§ 1158(a) and 1253(h). We review for substantial evidence. See Kazlauskas v. INS, 46 F.3d 902, 907 (9th Cir.1995). We have jurisdiction pursuant to 8 U.S.C. § 1105a(a), and we deny the petition.[1]
 
 
 3
 Petitioners contend that the BIA erred by finding that they neither suffered past persecution nor had a well-founded fear of future persecution based on their opposition to the Communist regime which ruled Afghanistan at the time of their departure. This contention lacks merit.
 
 
 4
 We review for substantial evidence the BIA's factual findings underlying its decision that an applicant is ineligible for asylum, see Ramos-Vasquez v. INS, 57 F.3d 857, 861 (9th Cir.1995), and we will reverse that decision only if the applicant presents compelling evidence of persecution, see Kazlauskas v. INS, 46 F.3d 902, 905 (9th Cir.1995).
 
 
 5
 Shukria Bafaiz testified that she was opposed to the Communist regime and that she was a member of the Jamiat-E-Islami branch of the Mujahedin, an anti-government political party. She testified that she lent her support as a nursing assistant by treating families of Mujahedin members at the International Red Cross Hospital. During her employment, Shukria stated that she was approached by representatives of Khad, the communist security police, who warned her not to treat Mujahedin families and to report their presence at the hospital. Despite threats of imprisonment for not obeying its orders, Shukaih stated that she continued to treat Mujahedin family members and declined to report their existence to the police officials.
 
 
 6
 Shukaih stated further that her husband fled to Pakistan shortly after their marriage because someone had reported his political activities to the Khad. She stated that agents came to her house looking for her husband and threatened her with imprisonment and torture if she did not reveal his whereabouts. Shukaih testified that she never disclosed her husband's whereabouts, but was never jailed or tortured for failing to do so. Shukaih further stated that she left Afghanistan because the Khads searched her house a few times, she thought that Khad agents were following her, and she thought that Khad agents were suspicious about patients at the hospital.[2]
 
 
 7
 After joining her husband in Pakistan, where they resided for nearly one year, Shukria testified that they left Pakistan because Khad agents were actively looking for members of the Afghani Mujahedin in Pakistan. Shukaih testified that despite the collapse of communist rule in Afghanistan, she nevertheless fears returning to her country due to fighting amongst the Mujahedin groups in Afghanistan.
 
 
 8
 Abdul Bafaiz testified that he was a member of the Mahaz-Melli, and anti-government Mujahedin political party for which he distributed flyers, pamphlets, and held meetings in his home. Abdul testified that Khad agents arrested his brother, also a member of the Mahaz-Melli, and jailed him for eleven days. Abdul testified that after talking to his brother upon his release, he determined that the Khad agents had actually been looking for him. Abdul testified that in order to avoid arrest, he hid at a friend's house and later lived in another town before departing for Pakistan in July 1989. Abdul also testified that his father, a member of the Mahaz-Melli, disappeared in 1986 while traveling from his home to a local mosque.
 
 
 9
 Abdul testified that he worked in the Mahaz-Melli office in Pakistan and that he and his wife left Pakistan due to fighting amongst the anti-government groups. He further testified that he was aware that the government in Afghanistan had changed but feared returning due to the ongoing fighting in the Mujahedin.
 
 
 10
 The BIA held that these incidents did not amount to persecution. The BIA also noted that given the changed circumstances in Afghanistan, Petitioners did not have an objectively reasonable fear of future persecution.[3]
 
 
 11
 We agree that these incidents do not rise to the level of persecution, and affirm the BIA's conclusion that Petitioners failed to establish either past persecution or an objectively reasonable fear of future persecution. See Saballo-Cortez v. INS, 761 F.2d 1259, 1265 (9th Cir.1984) (holding that petitioner's ability to remain fully employed and free from arrest undercut claim of persecution); See also Ghaly v. INS; 58 F.3d 1425, 1431 (9th Cir.1995) (distinguishing between persecution and mere discrimination or harassment). Petitioners' contention that they will be harmed if they return to Afghanistan due to the fighting amongst the Mujahedin factions is insufficient to demonstrate that they would be subject to a "particularized threat of persecution" apart from the general population See Kotasz v. INS, 31 F.3d 847, 851-52 (9th Cir.1994); see also Sanchez-Trujillo v. INS, 801 F.2d 1571, 1579 (9th Cir.1986).
 
 
 12
 Because the standard for withholding of deportation is higher than the standard for a grant of asylum and because Petitioners did not meet the lower standard for a grant of asylum, we affirm the BIA's denial of Petitioners' request for withholding of deportation. See Acewicz v. INS, 984 F.2d 1056, 1061 (9th Cir.1993).
 
 
 13
 PETITION FOR REVIEW DENIED.
 
 
 
 **
 The panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a); 9th Cir. R. 34-4
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Section 1105a was repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104-208, 110 Stat. 3009 (Sept. 30, 1996), as amended by Act of Oct. 11, 1996, Pub.L. No. 104-302, 110 Stat. 3656. However, because Petitioners were in exclusion proceedings before April 1, 1997, section 309(c) of IIRIRA provides that this court continues to have jurisdiction under 8 U.S C. § 1105a
 
 
 [2]
 Shakaih also stated that her grandmother was killed by an unidentified person who threw a bomb at her house
 
 
 [3]
 In 1992, a coalition of Mujanedin groups overthrew the communist regime. After the communist authorities were overthrown, there has been a dispute between Hezbi-Eslami and Jamiat-E-Islami Mujahedin groups over who will rule Afghanistan