Satish KUMAR; Sashi Lata
Kumar, Petitioners,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 98–71129.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 9, 1999.

Decided March 2, 2000

William Roman Gardner, Miguel D. Gadda (argued), San Francisco, California, for the petitioners.

David W. Ogden, Brenda E. Ellison, Laura M. Friedman, Alice E. Loughran (argued), United States Department of Justice, Washington, D.C., for the respondent.

Before: WIGGINS, O'SCANNLAIN, and HAWKINS, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether a change in Fijian country conditions rebuts the presumption that a Fijian of Indian descent seeking asylum in the United States has a well-founded fear of persecution.

## I

Petitioner Sashi Lata Kumar illegally entered the United States at Blaine, Washington, on or about April 24, 1991. When Kumar applied for asylum in this country, the Immigration and Naturalization Service ("INS") initiated deportation proceedings on the ground that she had entered the country without inspection by an immigration officer. At an evidentiary hearing before an Immigration Judge ("IJ"), Kumar testified that in 1986, when she was twenty-one years old, her father was politically active in the Fijian Labour Party. During the general election of that year, her father organized charity events, raised funds for the party, and transported voters to the polls. Kumar assisted her father in these activities by distributing beverages and handling other tasks. The Labour Party won the election, but was removed from power in a bloodless coup led by the military in 1987.

After the coup in 1987, a group of soldiers came to her home, tied her parents to a chair, and beat them. The soldiers locked her younger sister and brother in a room, and then at gun-point, demanded that Kumar remove her clothes. When she refused, the soldiers stripped her in front of her parents. The soldiers then fondled her all over her body. Finally, the soldiers punched and hit her father, telling him that this is what was going to happen to people who support the Labour Party. The soldiers warned Kumar that if her

father continued to support the Labour Party or if they saw her around, they would kill her.

Her family reported the incident to the police, but the authorities took no action. Later, her father was taken into custody and incarcerated for a fortnight where he was beaten severely and released only after having his life threatened.

A second incident occurred in July 1987 when Kumar and her mother were attending the Hindu temple where they worshiped. While there, a group of soldiers entered the temple, broke the religious statues contained therein, and burned a holy text. Two of the soldiers dragged her out of the temple by her hair. When her mother attempted to intervene, the soldiers knocked her unconscious. Once outside the temple, the soldiers punched and kicked Kumar. Then, at gun-point, one of the soldiers demanded that she change her religion from Hinduism to Christianity. Out of fear for her life, she said that she agreed.

A third incident took place in September 1987. A truckload of soldiers came to the secretarial school that Kumar was attending, shouting that Indians should go back to India. As her schoolmates fled, the soldiers caught Kumar and beat her until she was unconscious.

Approximately two months after this final incident, in November 1987, Kumar's father sent her to an uncle in Canada, where she applied unsuccessfully for refugee status. While she was in Canada, she met and married her current husband, who was also denied asylum in Canada. Together, the two crossed the border into the United States illegally in 1991.

On February 3, 1995, the IJ denied Kumar's application for asylum and withholding of deportation, but he granted her voluntary departure. In deciding the matter, the IJ relied primarily on the changed country conditions of Fiji. In addition, he did not find that acts perpetrated against her were so egregious that she warranted asylum regardless of the changed country conditions. He concluded his opinion by noting that because Kumar had not successfully made out a claim for asylum, she necessarily "failed to sustain her burden of proof with regarding withholding of deportation as well."

The Board of Immigration Appeals agreed. The Board did "not find any argument presented on appeal that persuades us that the Immigration Judge erred in his decision in this case." Specifically, the Board noted that Kumar "has not challenged the Immigration Judge's finding that the conditions in Fiji have fundamentally changed since the time of the incidents in which she based her application for asylum and withholding." Accordingly, the Board dismissed Kumar's appeal.

II

Although we typically review the decision of the BIA, when the Board adopts the decision of the IJ, we also review the decision of the IJ. *See Alaelua v. INS*, 45 F.3d 1379, 1382 (9th Cir.1995). We review the lower court's decision that an alien has not established eligibility for asylum under the "substantial evidence" standard. *See Singh v. INS*, 134 F.3d 962, 966 (9th Cir.1998). Therefore, the IJ's determination, affirmed by the Board, that an alien is not eligible for asylum must be upheld if supported by reasonable, substantial, and probative evidence in the record. *See INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). In other words, Kumar must show "that the evidence [s]he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *Id.*

To qualify for asylum under 8 U.S.C. § 1158, Kumar must demonstrate a well-founded fear of persecution, on account of statutorily protected grounds, that is both subjectively genuine and objectively reasonable. *See Sanchez–Trujil-*

*lo v. INS,* 801 F.2d 1571, 1579 (9th Cir. 1986). Kumar is not, however, required to show that an occurrence of the feared persecution is more likely than not. *See INS v. Cardoza–Fonseca,* 480 U.S. 421, 431, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) ("One can certainly have a well-founded fear of an event happening when there is less than a 50% chance of the occurrence taking place.").

■ To reach the conclusion that Petitioner qualifies for withholding of deportation under 8 U.S.C. § 1253(h), the IJ must find that she has shown that there would be a "clear probability of persecution" if she were deported. *INS v. Stevic,* 467 U.S. 407, 430, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984). For this second form of relief, therefore, Petitioner bears a higher burden of proof, under which she must demonstrate that it would be "more likely than not" that the feared persecution would occur. *Id.* at 424, 104 S.Ct. 2489. Thus, should Kumar fail to qualify for the discretionary relief of asylum, she would necessarily fail to qualify for the mandatory relief of withholding of deportation. *See Cardoza–Fonseca,* 480 U.S. at 440–41, 107 S.Ct. 1207.

### III

■ Kumar claims asylum on the basis of the persecution she suffered on account of her race, political opinion, and religious beliefs. Although the abuse suffered in this case is at least as serious as in other cases where we have found persecution, *see, e.g., Korablina v. INS,* 158 F.3d 1038, 1044–45 (finding that persecution was compelled where petitioner witnessed a violent attack on her boss, was tied to a chair with a noose around her neck, and was threatened with death); *Surita v. INS,* 95 F.3d 814, 819 (9th Cir.1996) (finding that persecution was compelled where soldiers robbed petitioner every day for a week, looted her family's house at gunpoint, and threatened to rape and kill the woman if she reported the robbery to the police), the presumption of a well-founded fear she

would ordinarily enjoy under 8 U.S.C. § 1158(a) and *Garrovillas v. INS,* 156 F.3d 1010, 1017 (9th Cir.1997), is overcome, in this case, by the changed conditions in Kumar's native country. *See Kazlauskas v. INS,* 46 F.3d 902, 906 (9th Cir.1995); 8 C.F.R. § 208.13(b)(1)(i). Therefore, even if we were to assume that Kumar suffered past persecution, our conclusion that conditions in Fiji have changed rebuts any presumption that she possesses a well-founded fear of future persecution. *See Kazlauskas,* 46 F.3d at 906.

The record in this case is replete with evidence of changed country conditions and Kumar has presented no evidence or arguments to suggest otherwise. Reports by both Amnesty International and the Department of State conclude that there is no longer widespread abuse of human rights in Fiji. Indeed, the Labour Party to which Kumar's father belonged—and which she herself served—played an open and active role in the 1992 elections, which were found to be free and fair. The Immigration Judge specifically relied upon this evidence in finding that the presumption of a well-founded fear of future persecution has been overcome. We can find no evidence in the record that compels an alternative conclusion.

All of the suffering that Kumar endured took place in the aftermath of the 1987 coups. Since that time, conditions have improved significantly in Fiji, and any lingering discrimination that may exist against Indo–Fijians certainly does not rise to the level of persecution. The Immigration Judge's denial of Kumar's application upon this ground, therefore, is supported by substantial evidence. *See Elias–Zacarias,* 502 U.S. at 481, 112 S.Ct. 812.

### IV

■ The only remaining avenue of relief for Kumar is the argument that her suffering was so severe that it constituted atrocious persecution and, for humanitari-

an reasons, she should therefore not be forced to return to Fiji. *See Acewicz v. INS,* 984 F.2d 1056, 1062 (9th Cir.1993) (citing *Matter of Chen,* 20 I & N Dec. 16, 19, 1989 WL 331860 (B.I.A.1989)). The abuse visited upon Kumar does not amount to this level of horror. In *Chen,* the eight-year-old petitioner's home was destroyed, and his father was dragged through streets and forced to write confessions of his crimes over fifty times. *See id.* at 19. His father was also pushed into a bonfire of burning bibles. *See id.* The petitioner was also beaten and sent for reeducation on numerous occasions, as well as being stoned at one point. *See id.* The Board held that such severe persecution overrode the fact of changed country conditions in China since that time. *See id.* at 21. Kumar's suffering does not compare to that described in *Chen,* and she therefore does not warrant a special dispensation of humanitarian relief. The record does not compel a contrary finding.

## V

Because Kumar has not met the standard for asylum, she necessarily cannot meet the more stringent standard for withholding of deportation. *See De Leon–Barrios v. INS,* 116 F.3d 391, 394 (9th Cir. 1997).

## VI

For the foregoing reasons, we hold that substantial evidence exists to support the Board of Immigration Appeals' determination that the change in Fijian country conditions rebuts Kumar's well-founded fear of persecution.

PETITION DENIED.