**Syed Karim SHAH, Petitioner,**

v.

**John ASHCROFT, Attorney General of the United States, Respondent.**

No. 02–3440.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit L.A.R. 34.1(a) Tuesday, July 22, 2003.

Decided Aug. 18, 2003.

---

**2.** He does not contest the amount or reasonableness of the fees, costs and expenses.

Before: ALITO, FUENTES, Circuit Judges, and SURRICK,* District Judge.

## OPINION OF THE COURT

FUENTES, Circuit Judge.

Syed Karim Shah ("Shah"), a native and citizen of Afghanistan, petitions for review of a decision of the Board of Immigration Appeals ("BIA" or "Board") ordering him removed to Afghanistan. An Immigration Judge ("IJ") denied Shah's application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT") because changed country conditions precluded a finding of persecution and because Shah would not be likely to be tortured or killed if he were returned to his home country. The BIA affirmed the IJ's determination and dismissed the appeal. In light of the deference we owe to the BIA's factual findings, and for the reasons that follow, we cannot say that the record evidence compels a conclusion contrary to the BIA's. Thus, we will dismiss Shah's petition.

## I. Background

Shah attempted to enter the United States unlawfully on February 21, 2001, at John F. Kennedy International Airport in New York without any documentation. Soon thereafter, Shah conceded his removability, but requested relief in the form of

---

* Hon. R. Barclay Surrick, U.S. District Judge for the Eastern District of Pennsylvania, sitting by designation.

asylum, withholding of removal, and protection under the CAT.

At a hearing before an IJ, Shah testified, with the assistance of a Pashtu interpreter, that he owned a small store in Anguryan, Afghanistan. He said that one day in October of 2000, he found his uncle, brother, and two Taliban dead in his store after he returned from a shopping trip.[1] He testified that the other Taliban who were present accused him of the killings and storing weapons in the store. He also indicated that the Taliban accused him of being against them, a charge which he denied. He said that the Taliban beat him severely until he became unconscious. When he regained consciousness, he was in a dark room. Then, for the next two and a half months, he was beaten and questioned regularly.

Shah testified that he was eventually brought before a Taliban judge and that he told the judge that the weapons in his store had belonged to his deceased uncle. Despite Shah's explanation, the Taliban judge ordered Shah to be executed. The judge, however, granted his last wish of a visit with his mother. Shah described a guard detail of six Taliban taking him to his mother's house and then allowing him to visit with his mother alone and unrestrained. Shah said that he escaped by going from his mother's house through connecting doors to six or seven other houses in the village. He then walked to another relative's house outside of his village and that relative drove him to Pakistan. Shah said that he stayed in Pakistan for over a month and then paid an agent about $14,000 or $15,000 to bring him to the United States.

The documentary evidence submitted by Shah and the Immigration and Naturalization Service ("INS") included Department of State Country Reports for 1999 and 2000, Amnesty International Reports, various news articles, Shah's birth certificate, and two personal affidavits from relatives attesting to his identity.

After hearing Shah's testimony, the IJ made an adverse credibility determination and denied his application on all grounds of requested relief. On January 23, 2002, the BIA reversed the Immigration Judge's adverse credibility finding and remanded the case for further consideration of Shah's case in light of changed country conditions following the removal of the Taliban from power and the establishment of an interim government in Afghanistan.

On remand, the IJ heard testimony and received documentary evidence about changed country conditions in Afghanistan. Shah conceded that the Taliban were no longer in power as of the date of the hearing. He insisted, however, that the Taliban still had a presence in Afghanistan and that the interim government was only in control of the capital, Kabul, while the rest of the country was very unstable. He also testified he could not live safely anywhere in Afghanistan because the Uzbeks and Tajiks would want to harm him because of his ethnicity.[2] Shah said that he feared that he would be killed by the Taliban, Uzbeks, or Tajiks if he were returned to Afghanistan. Shah and the INS submitted newspaper articles, reports concerning recent country conditions, the Department of State country report for 2001,

---

1. In October 2000, the Taliban were the governing group in Afghanistan.

2. The Uzbeks and Tajiks were treated very badly by the Taliban while the Taliban were in power. The Taliban are Pashtuns. Following the removal of the Taliban, the Uzbeks and Tajiks have reportedly retaliated against Pashtuns, even those who were not Taliban. Shah is Pashtun.

and the Human Rights Watch country report for 2002.

The IJ determined that changed country conditions precluded a finding of persecution and again denied Shah's application for asylum and withholding of removal. The IJ also concluded that the record did not support a finding that Shah would be tortured in Afghanistan, and thus denied protection under the CAT. On August 6, 2002, the BIA affirmed the IJ's decision and entered a final order of removal. This appeal followed.

### III.  Analysis

The BIA dismissed Shah's appeal from the denial of his application for asylum and withholding of removal because it agreed with the IJ's "determination that changed country conditions in Afghanistan render unreasonable [Shah's] professed fear of persecution by the Taliban." (A.R. at 2). In reaching that conclusion, the BIA noted that the INS had met its burden of demonstrating changed country conditions while Shah had not met his burden of rebutting the INS's evidence. *Id.* The BIA also agreed with the IJ's conclusion that "it is not more likely than not that the government of Afghanistan will torture [Shah] or acquiesce in his torture by others," thus precluding protection under the CAT. *Id.* This Court has jurisdiction to review final orders of removal pursuant to 8 U.S.C. § 1252(a)(1). *See Abdulai v. Ashcroft*, 239 F.3d 542, 548 (3d Cir.2001).

### A.  Asylum and Withholding of Removal

The Attorney General may exercise his discretion to grant asylum to an applicant "if the Attorney General determines that such alien is a refugee...." *See* 8 U.S.C. § 1158(b). A refugee is "any person who is outside any country of such person's nationality ... and who is unable or un-willing to return to, and is unable or un-willing to avail himself or herself of the protection of that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]" 8 U.S.C. § 1101(a)(42)(A). The asylum applicant bears the burden of establishing that he or she qualifies as a "refugee." *See* 8 C.F.R. § 208.13(a) (2001).

In order to establish eligibility for asylum based on past persecution, the applicant must show: (1) one or more incidents rising to the level of persecution; (2) that are "on account of" one of the statutorily-protected grounds; and (3) are committed either by the government or by forces that the government is either unable or unwilling to control. *See Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir.2002). A showing of past persecution gives rise to a rebuttable presumption of a well-founded fear of future persecution. *See* 8 C.F.R. § 208.13(b)(1); *Abdulrahman v. Ashcroft*, 330 F.3d 587, 592 (3d Cir.2003). "Where past persecution is not established, '[a]n applicant can demonstrate that she has a well-founded fear of future persecution by showing that she has a genuine fear, and that a reasonable person in her circumstances would fear persecution if returned to her native country.'" *Abdulrahman*, 330 F.3d at 592 (quoting *Gao*, 299 F.3d at 272).

In order to qualify for withholding of removal, on the other hand, an applicant must show a "clear probability" that his or her life or freedom would be threatened if s/he is deported. *See Lin v. INS*, 238 F.3d 239, 243 (3d Cir.2001) (citing *Chang v. INS*, 119 F.3d 1055, 1066 (3d Cir.1997)). "Clear probability" is considered a higher standard than "well-founded fear." *See INS v. Stevic*, 467 U.S. 407, 429–30, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984); *see also*

*Chang,* 119 F.3d at 1066. Accordingly, an applicant who fails to prove "well-founded fear" in seeking asylum will similarly be unable to prove "clear probability" with respect to withholding of deportation. *See Zubeda v. Ashcroft,* 333 F.3d 463, 469–70 (3d Cir.2003). Therefore, so long as the BIA correctly denied Shah's application for asylum, it necessarily follows that the BIA's denial of his application for withholding of removal was proper as well.

Whether an asylum applicant has demonstrated past persecution or a well-founded fear of future persecution is a factual question, which we review under the substantial evidence standard. *See Gao,* 299 F.3d at 272.

Shah argues that the BIA's failure to consider his claim of past persecution denied him a presumption of well-founded fear of future persecution. We do not agree with Shah's assumption that the BIA failed to consider his claim of past persecution. Although the BIA decision under review does not specifically discuss past persecution, the procedural history of this case makes clear that the BIA had earlier considered Shah's claim. After the BIA reversed the IJ's adverse credibility determination, it remanded Shah's application for consideration of changed country conditions. The remand would only have been necessary if the BIA had determined that Shah had presented sufficient evidence of past persecution to warrant the further consideration. *See* 8 C.F.R. § 208.13(b)(1)(i)(A) (stating presumption of

well-founded fear of future persecution can be rebutted by evidence that "there has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality . . . ."). If the BIA had concluded that Shah had not met his burden with respect to past persecution, it would simply have dismissed the appeal at that point in the proceedings.[3]

Next, Shah argues that, in concluding that the INS met its burden of demonstrating changed country conditions, the BIA ignored his stated fears about the former Taliban who remain in Afghanistan. Shah is incorrect. The BIA noted that "the Taliban government is no longer in power in Afghanistan, and its leaders are no longer in a position to visit mistreatment upon [Shah] throughout the whole country, to the extent that remnants of the Taliban remain in Afghanistan." (A.R. at 2). Accordingly, it is clear that the BIA did consider Shah's fear that the remaining Taliban would harm him upon his return, but found that this fear was not reasonable.

█ Similarly, Shah argues that the BIA ignored his fears about the Tajiks and Uzbeks who might want to harm him simply because he is Pashtun. Although the BIA did not specifically mention Shah's fears about the Tajiks and Uzbeks, it affirmed the IJ's "determination that changed country conditions in Afghanistan render unreasonable [Shah's] professed

---

**3.** Shah asserts that the BIA's failure to address his claim of past persecution was harmful for an additional reason. If an applicant can establish past persecution, but not a well-founded fear of future persecution, he may be granted asylum if there are compelling reasons not to return him to his native country. *See Matter of Chen,* 20 I & N Dec. 16, 1989 WL 331860 (BIA 1989). If, for example, Shah had suffered particularly "atrocious

forms of persecution," he might be granted asylum on the basis of past persecution alone. *See e.g. Kazlauskas v. INS,* 46 F.3d 902, 906 (9th Cir.1995). The IJ found that there was no compelling reason not to return Shah to Afghanistan arising from the severity of his past persecution. (A.R. at 65). We find Shah's argument to the contrary unpersuasive.

fear of persecution by the Taliban...." *Id.* In reaching her determination in that regard, the IJ considered Shah's stated concern about other ethnic groups in Afghanistan. The IJ mentioned, in her oral decision, Shah's belief that "Pashtu people will be revenged upon by other ethnic groups since the Taliban extremists were Pashtu," and that "he will be singled out as a Pashtu because he does not speak Farsi and he has a Pashtu accent." *Id.* at 53. The IJ also noted Shah's denial that "he can live elsewhere in other regions because the Pashtu are disliked everywhere." *Id.* The IJ observed, however, that Shah admitted on cross-examination that "he himself has never been harmed by any Tajiks or any Uzbeks in Afghanistan," and that because President Karzai (a Pashtun) controls the Kabul region, he would be safe there (as a Pashtun). *Id.* at 53–54. Finally, the IJ observed that Shah himself "could not even suggest that ... there is nowhere in Afghanistan that he can live safely." *Id.* at 63. Inasmuch as the BIA adopted the IJ's findings about changed country conditions and the IJ clearly considered Shah's stated fears concerning the Tajiks and Uzbeks, the BIA did not ignore these fears.

Shah also argues that the BIA applied an incorrect legal standard in evaluating changed country conditions. In order to rebut a presumption of well-founded fear of persecution, the INS must establish that conditions in the country have changed *such that* the applicant no longer has a well-founded fear of being persecuted if he were returned to the country. *See* 8 C.F.R. § 208.13(b)(1)(I) (emphasis added). Shah contends that the BIA's decision suggests that the only burden on the INS is to show that country conditions have changed. As proof, Shah points to the portion of the BIA's decision which states, "we conclude ... that the Immigration and Naturalization Service met its burden of

demonstrating changed country conditions...." (A.R. at 2). Shah's proof is contradicted by another portion of the BIA's decision. In its opinion, the BIA stated that it affirmed the IJ's "determination that changed country conditions in Afghanistan render unreasonable [Shah's] professed fear of persecution by the Taliban...." *Id.* That statement is consistent with the standard set forth by 8 C.F.R. § 208.13(b)(1)(i). Accordingly, Shah's argument that the BIA applied an incorrect legal standard is meritless.

Finally, Shah maintains that the BIA's factual finding regarding changed country conditions is not supported by substantial evidence. "We will uphold the findings of the BIA to the extent that they are supported by reasonable, substantial and probative evidence on the record considered as a whole, and will reverse those findings only if there is evidence so compelling that no reasonable factfinder could conclude as the BIA did." *Kayembe v. Ashcroft*, 334 F.3d 231, 234 (3d Cir.2003).

Shah argues that there is evidence in the record showing that former Taliban are still present and active in Afghanistan, that Hamid Karzai is only in control of Kabul, and that the rest of the country is controlled by warlords, former Mujahedin, and former Taliban. The INS, however, presented evidence showing that Afghanistan is no longer under Taliban rule, but rather is being operated by an interim government led by Hamid Karzai, and that reconstruction efforts are under way. Shah's evidence, when compared with the INS's evidence, simply is not so compelling that no reasonable factfinder could conclude, as the BIA did, that Shah no longer has a well-founded fear of being persecuted if returned to Afghanistan. *See id.*

Significantly, Shah did not present evidence demonstrating that there is no place

in Afghanistan where he could live safely. *See Etugh v. INS*, 921 F.2d 36, 39 (3d Cir.1990). Even assuming Shah is correct that he would be persecuted by Tajiks and Uzbeks because is Pashtun, the record evidence shows that the interim government, which is led by several Pashtuns, is in control of Kabul. There is nothing in the record to indicate that Shah would be any less safe in Kabul than any other Pashtun.

We do not mean to suggest that Shah has nothing to fear upon return to Afghanistan. Shah cites several reports and articles that describe the "deplorable conditions" in Afghanistan, including "a severe lack of food, water, security, education, job opportunities, and healthcare." (Shah's brief at 33–34). He points to the poor human rights situation and ongoing fighting in the country. *Id.* We certainly understand that many serious problems confront Afghanistan in the wake of the removal of the Taliban from power and following decades of conflict. However, generally poor conditions and random private acts of violence do not constitute persecution. *See Abdille v. Ashcroft*, 242 F.3d 477, 494–95 (3d Cir.2001) ("[O]rdinary criminal activity does not rise to the level of persecution necessary to establish eligibility for asylum."); *Singh v. INS*, 134 F.3d 962, 967 (9th Cir.1998) ("Mere generalized lawlessness and violence between diverse populations, ... generally is not sufficient to permit the Attorney General to grant asylum ...").

Because we find that the BIA correctly concluded that Shah is not entitled to asylum on the basis of a well-founded fear of persecution, we will dismiss Shah's petition to review the BIA's denial of asylum. And because Shah has not satisfied the lesser burden of proof required for asylum, he has also necessarily failed to satisfy the greater burden required for withholding of removal. *See Zubeda*, 333 F.3d at 469–70. Accordingly, we will dismiss Shah's petition to review the BIA's denial of withholding of removal.

### B. Convention Against Torture

In order to obtain relief under the CAT, an applicant must establish "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Sevoian v. Ashcroft*, 290 F.3d 166, 175 (3d Cir.2002) (quoting 8 C.F.R. § 208.16(c)(2)). This standard does not include a subjective component, but rather requires that the applicant show entitlement to relief by objective evidence. *See id.* Once an applicant establishes a claim for relief under the Convention Against Torture, s/he may not be removed to the country where the torture occurred. *Zubeda*, 333 F.3d at 471.

Shah argues that the BIA violated due process because it did not perform an individualized assessment of his CAT claim. Shah argues that the BIA's failure is demonstrated by the fact that it purported to affirm a finding that the IJ did not actually make. Specifically, the BIA stated that it affirmed the IJ's determination that "it is not *more likely than not* that the government of Afghanistan will torture [Shah] or acquiesce in his torture by others." (A.R. at 2) (emphasis added). But the IJ determined only that the evidence "does not support a finding that ... [Shah] *would be* tortured if he is forced to return to Afghanistan." *Id.* at 66 (emphasis added). Shah contends that the IJ applied the wrong standard (whether Shah would be tortured), but that the BIA covered up her error by quoting the correct standard (that Shah was not more likely than not to be tortured) while ignoring the fact that the IJ applied the wrong one.

In *Abdulai*, we recognized that a permanent resident alien facing removal

was entitled to basic due process protection. 239 F.3d at 549. In that context, we stated, "due process requires three things. An alien: (1) is entitled to 'factfinding based on a record produced before the decisionmaker and disclosed to' him or her; (2) must be allowed to make arguments on his or her own behalf; and (3) has the right to an 'individualized determination of his [or her] interests.'" *Id.* (citations omitted). With respect to the third requirement, the "decisionmaker must 'actually consider the evidence and argument that a party presents.'" *Id.* (citation omitted). "But because '[a]gency action ... is entitled to a presumption of regularity,' [the petitioner] bears the burden of proving that 'the BIA did not review the record when it considered the appeal.'" *Id.* (citations omitted).

Assuming *Abdulai* applies here, Shah has not met his burden of proof. In this case, the factual findings were clearly based on the record and Shah was allowed to make arguments on his own behalf. We also note that, after considering the evidence and arguments presented, the BIA did make an individualized determination of Shah's interests. Significantly, Shah did not argue in his brief to the BIA that the IJ had applied an erroneous standard of law with respect to his CAT claim. Thus, there is no reason to think that the BIA did not conduct its own analysis of the record.

Shah argues in the alternative that the BIA's conclusion is not supported by substantial evidence. Shah does not cite to any evidence in the record tending to show that no reasonable factfinder would have reached the same conclusion as the BIA. Nor could he. There is no objective evidence in the record showing that Shah would more likely than not be tortured by Hamid Karzai's interim government upon his return to Afghanistan.

Because the BIA did not violate due process in rejecting Shah's CAT claim and because its determination is supported by substantial evidence, we will dismiss Shah's petition to review the BIA's denial of protection under the CAT.

## IV. Conclusion

For the foregoing reasons, we dismiss Shah's petition for review of the BIA's final order of removal.

