

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-6-2004

# Bitraj v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1523

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Bitraj v. Atty Gen USA" (2004). *2004 Decisions.* Paper 252.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/252

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 03-1523

———

ORBELIN M. BITRA,J

Petitioner

v.

JOHN ASHCROFT, Attorney General of the United States,

Respondent

———

On Petition for Review of a Final Order
of  the Board of Immigration Appeals
( No. A76 582 864)

———

Submitted under L.A.R. 34.1
September 24, 2004

Before: McKee, Aldisert and Greenberg, <u>Circuit Judges</u>.

(Filed October 6, 2004)

———

OPINION OF THE COURT

———

ALDISERT, <u>Circuit Judge</u>.

1

Petitioner Oberlin M. Bitraj seeks review of a final order of removal by the Board of Immigration Appeals ("BIA" or "Board") affirming without opinion an Immigration Judge's ("IJ's") denial of Bitraj's applications for asylum, withholding of removal and protection under the Convention Against Torture ("CAT"). We must decide whether: (1) the BIA's affirmance without opinion of the IJ opinion comports with the requirements of due process; (2) substantial evidence supports the IJ's denial of Bitraj's applications for asylum withholding of removal; and ( 3) this court lacks jurisdiction to review Bitraj's new claims of ineffective assistance of counsel and eligibility for adjustment of status, in light of his failure to exhaust his administrative remedies on this issue.

Because we write only for the parties who are familiar with the facts and the administrative proceedings, we will discuss only the legal issues presented.

I.

We lack jurisdiction to review Bitraj's claim that he has suffered from prior ineffectiveness of counsel because he has never raised that issue with the Board. See I.N.A. § 242(b) (2003), 8 U.S.C § 1252(b) (2003); Abdul Rahmn v Ashcroft, 330 F.3d 587, 594 (3d Cir. 2003). Further, we lack jurisdiction to review Bitraj's demand that his case be remanded to the Board so that his request for adjustment of status can be considered. Bitraj has filed a motion to reopen with the Board that is currently pending and therefore that issue is not ripe for review.

## II.

This court has recently held that the Board's affirmance without opinion procedure comports with the requirements of due process. Dia v. Ashcroft, 353 F.3d 228, 241-242 (3d Cir. 2003).

## III.

We review the IJ's decision under the substantial evidence standard. Substantial evidence is lacking only in those cases where the petitioner can establish that the evidence of record was "so compelling that no reasonable fact finder could [have] fail[ed] to find" in his favor. INS v. Elias-Zacarias 502 U.S. 478, 481 n.1 (1992). Adverse credibility determinations, such as this case, are reviewed for substantial evidence. Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002).

An asylum applicant bears the burden of proving eligibility for asylum. 8 C.F.R. § 1208.13(a) (2003); see also Gao, 299 F.3d at 272. In order for an asylum applicant to demonstrate that he is a refugee, the applicant must present specific facts demonstrating that he suffered past persecution or has a well-founded fear of future persecution because of one of the categories protected by the statute. 8 U.S.C. § 1101(a)(42)(a); see also Elias-Zacarias, 502 U.S. at 482-483. To demonstrate a well-founded fear of persecution, the asylum applicant must establish that he has a genuine fear, and that a reasonable person in his circumstances would fear persecution if returned to his native country. See Elnager v. INS 930 F.2d 784, 786 (9th Cir. 1991); 8 C.F.R. § 1208.13(b)(2)(i)(B).

3

To qualify for withholding of removal, the asylum applicant bears the burden of demonstrating that his "life or freedom would be threatened [in his country] because of [his] race, religion, nationality, membership in a social group, or political opinion." I.N.A. § 241(b)(3), 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 1208.16(b); see generally INS v. Stevic, 467 U.S. 407, 424, 430 (1984). This requires a showing of a "clear probability" of future persecution, id., that "it is more likely than not" that the alien would be persecuted because of one of the qualifying grounds, see 8 C.F.R. § 1208.16(b); Cardoza-Fonseca, 480 U.S. at 449-50. This is more stringent than the well-founded fear standard for asylum. Id. Thus, an alien who fails to show a well-founded fear of persecution will, by definition, fail to show a clear probability of a threat to life or freedom. Al Harbi v. INS, 242 F.3d 882 , 888-889 (9th Cir. 2001).

Withholding of removal or deportation under 8 C.F.R. section 208.16(c)(4)(2001) provides protection under the CAT. Under the regulations, an applicant for withholding of removal under the CAT bears the burden of proof to "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." See 8 C.F.R. § 208.16(c)(2).

IV.

The record amply supports the immigration judge's determination that Bitraj failed to establish that he had a well-founded fear of future persecution. The immigration judge concluded that while Bitraj's family suffered past persecution under the communist regime, fundamental changes in the country conditions in Albania that occurred with the

4

collapse of the communist regime undermined Bitraj's claim of a well-founded fear of future persecution on account of his democratic, anti-communist political beliefs.

In this regard, the IJ relied on the Department of State ("DOS") country reports, a DOS general profile of asylum claims and a letter from DOS' Office of Country Reports and Asylum Affairs specifically addressing Bitraj's claims, (see R. at 197- 221, 275), in determining that Bitraj was not credible, (see id. at 37-51). Specifically, the DOS reports indicated that the 1998 demonstrations in Skhodra were not peaceful, but rather violent.

Most critically, the letter from DOS' Office of Country Reports and Asylum Affairs indicates that members of the Albanian army, who are chosen to go overseas to participate in NATO training exercises, are generally in good standing with the military and are being groomed for future leadership. Indeed, Bitraj himself testified that he was promised overseas travel and scholarships in return for his outstanding service in March 1997 for protecting his military academy from looters. The letter further states that while members of the military can face discipline for desertion, the office was not aware that members of the military were being punished for their political beliefs. It was entirely proper for the IJ to accord considerable weight to the findings of Department of State. Cf. Sevoian v. Ashcroft, 290 F.3d 166, 176 (3d Cir. 2002) (citing Kazlauskas v. INS, 46 F.3d 902, 906 (9th Cir. 1995) (stating that country condition profiles developed by the U.S. State Department are "'the most appropriate and perhaps the best resource' for information

5

on political situations in foreign nations") (quoting <u>Rojas v. INS</u>, 937 F.2d 186, 190 n.l (5th Cir. 1991)); <u>Dobrota v. INS</u>, 195 F.3d 970 (7th Cir. 1999) (general changes in country conditions shown by Department of State reports were sufficient to support a finding of no well-founded fear of future persecution). Because Bitraj's testimony conflicted with the DOS' findings, substantial evidence supports the immigration judge's adverse credibility finding.

In addition, the IJ determined that Bitraj was not credible because of his own misrepresentations regarding his claim that he was facing future persecution through trumped up espionage charges because of his democratic beliefs. Specifically, Bitraj wrote in his asylum application affidavit that he and his fellow cadets did not obey the order to report to Skhodra because they were not "command troops." In his testimony before the IJ, he changed his story to indicate that he did not wish to assist in putting down the rebellion because he believed that the demonstrators were peaceful and unarmed. The IJ found his testimony incredible because of the inconsistencies between his written statements and oral testimony, and the implausibility of his story that immediately after being disciplined for disobeying the Skhodra orders, he was selected to participate in the NATO overseas training program. In determining that Bitraj's account was not credible, the IJ weighed the Department of State report that the Skhodra rebellion

6

was indeed violent, (R. at 275), and that members of the Albanian military who are sent overseas are generally in good standing.

Thus, the record amply supports the IJ's decision  In addition, Bitraj has failed to establish that it is more likely than not that he would be tortured if removed to Albania.

* * * * *

We have considered all of the arguments advanced by the parties and conclude that no further discussion is necessary.

The petition for review will be denied.